15 F.3d 219
 Jerome RUSSELL, Plaintiff-Appellee,
v.
Charles C. SCULLY, Superintendent, Bobbie Jo LaBoy, Thomas
A. Coughlin, III, J.A. Dempskie, William McGinnis,
L. Carey, Defendants,
Wilbur Wright, Captain, Defendant-Appellant.
 No. 14, Docket 92-2057.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 21, 1992.
Decided June 4, 1993.
Petition for Rehearing Filed
June 18, 1993.
 Opinion Modifying Decision on
Denial of Rehearing Jan. 3, 1994.
 
 Martha O. Shoemaker, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., of counsel), for defendant-appellant Wilbur Wright.
 Michael E. Salzman, New York City (Padraig A. O'Riordain, Flavio Cumpiano Alfonso, Hughes Hubbard & Reed, of counsel), for plaintiff-appellee.
 Before: VAN GRAAFEILAND, WINTER and MAHONEY, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Wilbur Wright appeals from Judge Sweet's denial of his motion for summary judgment. The motion was directed at Jerome Russell's complaint, brought under 42 U.S.C. Sec. 1983 (1988), that Wright violated Russell's Fifth and Fourteenth Amendment rights. Wright, a hearing officer at the Green Haven Correctional Facility, found Russell guilty of assault and violent conduct. In reaching this conclusion, Wright failed to assess independently the credibility of confidential sources implicating Russell. This appeal invites us to decide whether a constitutional right to such an assessment was clearly established at the time of the hearing. We decline the invitation, however, because Russell's confinement was proper as an administrative measure, and he suffered no violation of constitutional rights.
 
 
 2
 This action arises from an October 29, 1989 assault on Larry Monroe, an inmate at the Green Haven Correctional Facility. While investigating the assault, Sergeant Bobbie Jo LaBoy spoke to most of the inmates in the cellblock, including the victim and three confidential informants. All three informants identified Russell as one of Monroe's assailants. Fearing for their safety, the witnesses asked LaBoy to keep their identities confidential. LaBoy wrote a misbehavior report based on these conversations and charged Russell with violent conduct, assault, and property damage. Her report also indicated that inmates threatened a "blood bath" unless "the situation was rectified" by Russell's punishment. Pending a hearing, Russell was placed in administrative confinement in the Special Housing Unit.
 
 
 3
 On November 15, 1989, Captain Wilbur Wright presided over Russell's disciplinary hearing. Russell testified in his own defense and called two other inmates to corroborate his testimony. Russell also requested that Monroe, the victim of the assault, be called as a witness. Upon taking the stand, however, Monroe refused to answer any questions. Finally, Russell requested that the three confidential inmate-informers be called to testify. Wright refused this request, but questioned Sergeant LaBoy about the reliability of the confidential sources and the extent of her past experiences with the informants. LaBoy answered that she had dealt with one informant for a year, another for two years, the third for nine years, and that each had proven extremely reliable. There is evidence that Wright knew from prior experience that LaBoy's confidential sources generally provided reliable information.
 
 
 4
 After the hearing, Wright found Russell innocent of property damage but guilty of assault and violent conduct, and imposed a sentence of 180 days in the Special Housing Unit, and loss of certain privileges. Russell administratively appealed this sentence on the grounds that Wright did not allow him to call certain witnesses and failed to conduct an independent in camera assessment of the confidential informants' reliability. This administrative appeal was successful, the disciplinary record expunged, and a second hearing ordered to be held within seven days.
 
 
 5
 Captain McGinnis held the second hearing on February 12 and 14, 1990. LaBoy was not allowed to testify about the confidential informants in Russell's presence. Instead, McGinnis heard and recorded LaBoy's testimony and later informed Russell of the substance of her testimony. McGinnis found Russell guilty of assault and violent conduct. Russell again successfully appealed on the grounds that the hearing officer committed procedural error. No third hearing was ordered, and Russell was returned to a general population cell.
 
 
 6
 Russell thereafter filed this action, alleging that, by imposing sentence without independently assessing the credibility of the confidential informants, Wright had violated Russell's Fifth and Fourteenth Amendment rights. Wright moved for summary judgment on the ground that he enjoyed qualified immunity. Judge Sweet denied the motion, holding that the failure to assess independently the credibility and reliability of informants breached a clearly established due process right and that the defense of qualified immunity was therefore inapplicable. 782 F.Supp. 876. This appeal followed.
 
 
 7
 Both parties argue that the instant matter turns on the question of whether or not prisoners in 1989 had a clearly established right to an independent examination of the credibility of confidential informants. We need not decide this question, however, because he was subject only to a valid administrative confinement pending his hearing and appeal and suffered no deprivation of a protected liberty interest.
 
 
 8
 Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), held that the Due Process Clause does not create "an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." Id. at 466-67, 103 S.Ct. at 868-69. Noting that "lawfully incarcerated persons retain only a narrow range of protected liberty interests," id. at 467, 103 S.Ct. at 868, the Court held that the Due Process Clause alone does not protect prisoners from even a grievous change "in conditions of confinement." Id. at 468, 103 S.Ct. at 869. Moreover, the Court stated that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point" because it is necessarily employed "to protect [a] prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer." Id. Many of these goals were served by the confinement at issue in this case. In short, Russell's transfer "to less amenable and more restrictive [administrative] quarters for nonpunitive reasons" did not violate rights established under federal due process. Id.
 
 
 9
 Nevertheless, New York statutes or regulations may create a right to confinement in a general population cell that is then protected by the Due Process Clause. See Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (finding federally protected state-created right to good-time credits, although the federal Constitution did not create a similar right independent of state law). This, however, is not the case here. New York's regulatory scheme allows for Russell's confinement: (1) from the charge to the hearing, and (2) from the hearing to the appeal. It is beyond dispute that the prison regulations authorized Russell's prehearing administrative confinement to preserve order and to protect the safety of various prisoners. An investigating officer had spoken to three witnesses who identified him as Monroe's assailant. There was thus good reason to believe the safety of Russell and other inmates would be more secure if Russell was in administrative confinement pending a hearing. 7 N.Y.C.R.R. Secs. 301.2-301.5. Moreover, prison regulations also allowed inmates to be kept in special housing units "as a result of a hearing." Id. at 301.4(a). Russell's confinement pending appeal is such a "result of a hearing" and qualifies as administrative confinement. New York did not, nor was it required to, give Russell the right to avoid administrative confinement pending his appeal. See Hewitt, 459 U.S. at 467, 103 S.Ct. at 868.
 
 
 10
 Finally, an inmate is not deprived of due process where an administrative appeal has cured a hearing's procedural defects. See Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir.1992) (per curiam); Williams v. Tavormina, No. 89-1247T, 1992 WL 487335, 1992 U.S.Dist. LEXIS 21170 (W.D.N.Y. Aug. 28, 1992) (due process was not violated when an appeal corrected a disciplinary hearing's errors).
 
 
 11
 We therefore reverse.
 
 ON PETITION FOR REHEARING
 Petition for Rehearing Filed June 18, 1993
 Decided Jan. 3, 1994
 
 12
 On petition for rehearing plaintiff-appellee seeks reconsideration of our reversal of the denial of summary judgment on grounds of qualified immunity of the appellant. Although we modify our opinion, the petition is denied.
 
 WINTER, Circuit Judge:
 
 13
 Jerome Russell, plaintiff-appellee, petitions for rehearing, with a suggestion for rehearing in banc, following our decision in Russell v. Scully, 13 F.3d 219 (2d Cir.1993). In that decision, we held that summary judgment should have been granted against Russell in his civil rights action against New York state prison official Captain Wilbur Wright. Familiarity with our prior opinion is assumed. In his petition for rehearing, Russell points out that in addition to confinement in a segregated housing unit ("SHU"), he was deprived of certain privileges while his administrative appeal from the first disciplinary hearing was pending and that this deprivation of privileges was designated as punishment by Captain Wright. Russell also argues that the opinion's reliance upon Young v. Hoffman, 970 F.2d 1154 (2d Cir.1992) (per curiam), cert. denied, --- U.S. ----, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993), is incorrect because in that case the prisoner's punishment had not begun before the ruling was reversed on appeal. For reasons stated below, we modify our opinion but deny the petition.
 
 
 14
 We are persuaded by the petition that Russell's detention during the pendency of his appeal was not strictly administrative. The state had the right to hold Russell in administrative confinement in the SHU during the pendency of his appeal no matter how grave an error had been committed in the first hearing, see Hewitt v. Helms, 459 U.S. 460, 466-68, 103 S.Ct. 864, 868-69, 74 L.Ed.2d 675 (1983), and, further, his confinement in the SHU after the reversal and pending the second hearing was not unconstitutional. However, the loss of privileges was punitive, and Russell may seek damages for that loss. The damage would be limited to the loss of privileges, however, because confinement in the SHU pending the appeal was harmless. It is clear from the fact that Russell continued to be confined in the SHU after the reversal that Russell would not have been released from the SHU pending the appeal even had Captain Wright not begun the designated punishment. Confinement in the SHU would thus have continued whether or not the punishment began, and Russell thus did not suffer a constitutional harm by the confinement during the appeal period.
 
 
 15
 We do not reach the question of whether due process is violated by the imposition of punishment pending an appeal that redresses any error in the earlier proceeding, although we note that many appellants in the federal criminal system are serving their sentences when their convictions are reversed. The procedure of beginning sentences before an appellate examination of the merits of a conviction has survived due process challenges. See, e.g., McDonald v. Illinois, 557 F.2d 596, 600 & n. 1 (7th Cir.) (no caselaw supports plaintiff's claim that imprisonment of innocent person prior to State's pardon violated due process), cert. denied, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); see also Crane v. Logli, 992 F.2d 136 (7th Cir.1993) (no due process violation where plaintiff was held in maximum security prison after the reversal of his conviction but prior to issue of mandate from court), cert. denied, --- U.S. ----, 114 S.Ct. 245, 126 L.Ed.2d 198 (1993). We also note that we have held that due process is not violated by constitutional error at the trial stage in the case of a deprivation of a property interest where appeal rights are provided. See Marino v. Ameruso, 837 F.2d 45 (2d Cir.1988).
 
 
 16
 We do, however, alter the basis of our decision. As our earlier opinion noted, the arguments of the parties emphasized the question whether, in the context of prison discipline, inmates had a clearly established right in 1989 to an independent examination of the credibility of confidential informants. We believe that issue, slightly reformulated, is dispositive. It was not clearly established in 1989 (and is not now) that the procedure followed by Captain Wright constituted a constitutionally inadequate independent examination of credibility. Even if there is a due process right to an independent assessment of informants' credibility--and we do not regard that issue as foreclosed in this circuit--that right would not entail more than some examination of indicia relevant to credibility rather than wholesale reliance upon a third party's evaluation of that credibility. Because it was not clearly established at the time of the hearing--or now--that the procedure he used was inadequate, Wright, as a government official, is protected by qualified immunity. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Ying Jing Gan v. City of New York, 996 F.2d 522, 531 (2d Cir.1993).
 
 
 17
 In the instant matter, Wright inquired into the reliability of the informants and did not rely solely upon Sergeant LaBoy's assessments of the credibility of the confidential informants. The question, "Has this informant a history of reliability?" differs from the question, "Do you believe the informant?" The former seeks to elicit matters of historic fact while the latter calls for an opinion. In response to Wright's questions, LaBoy indicated the number of years that she had dealt with each informant and stated that each had been extremely reliable. Moreover, Wright knew that LaBoy's confidential informants had been historically reliable. Those are facts that are indicia of the informants' credibility upon which a hearing officer might have reasonably relied.
 
 
 18
 In determining whether it was clearly established at the time of the hearing that the procedure followed by Wright was constitutionally inadequate, we look to the caselaw of the Supreme Court and this circuit. Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir.1989). It was not clear in 1989, and it is not clear now, that due process requires a more elaborate assessment of credibility than that made by Captain Wright. Neither due process nor applicable precedent compels that a hearing officer such as Captain Wright conduct personal interviews of confidential informants. See Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974) ("Prison officials must have the necessary discretion to keep [disciplinary hearings] within reasonable limits and to refuse to call witnesses that may create a risk of reprisal....").
 
 
 19
 Moreover, there are presently no Supreme Court nor Second Circuit cases that clearly establish the procedures required to make an independent assessment of a witness's credibility. Appellee has cited only one district court case decided prior to the 1989 hearing that holds that there must be some evidence establishing the credibility of witnesses. Wolfe v. Carlson, 583 F.Supp. 977 (S.D.N.Y.1984). But see Gittens v. Sullivan, 720 F.Supp. 40, 43-44 (S.D.N.Y.1989) (right to independent assessment "not clearly established in this circuit or by decisions of the Supreme Court"). Wolfe, however, criticized a disciplinary proceeding where an inmate's punishment was based "solely on the report by a prison official of what an informant claims to have witnessed with no information as to the identity or the reliability of the informant." 583 F.Supp. at 981-82 (emphasis added). Other cases holding that there is a clearly established right to independent assessment of a witness's credibility similarly fail to mandate specific procedures for making the assessment. See, e.g., Frietas v. Auger, 837 F.2d 806, 810 (8th Cir.1988) (some determination of confidential informant's reliability must be made); Vasquez v. Coughlin, 726 F.Supp. 466, 471 (S.D.N.Y.1989) ("hearing officer must somehow assess the credibility and reliability of a confidential informant") (emphasis added). Because Captain Wright did examine and take into account reliable indicia of the informants' credibility, he enjoys an immunity from this action.
 
 
 20
 The petition is denied.