**Antonio BATISTA, Plaintiff,**

v.

**Walter R. KELLY, et al., Defendants.**

**No. 92–CV–784H.**

United States District Court,
W.D. New York.

June 7, 1994.

Antonio Batista, plaintiff pro se.

Gail Y. Mitchell, Asst. Atty. Gen., Albany, NY, for defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment, in accordance with 28 U.S.C. § 636(c). Pending for decision is defendants' motion for summary judgment dismissing the case against them. For the following reasons, defendants' motion is granted.

## *BACKGROUND*

The following facts are not in dispute. On June 21, 1992, while he was confined at the Attica Correctional Facility, plaintiff received an inmate misbehavior report written by Corrections Officer J. Orszulak charging plaintiff with violations of inmate rules No. 113.10 (weapons) and 114.10 (smuggling). According to the report, while conducting a metal detector search of "draft bags" containing plaintiff's property at the "Voc 2 property room" on that date, Officer Orszu-

lak detected a metal object inside plaintiff's economics text book (Item 18, Ex. A to Le-Baron Aff.). After confirming the presence of metal by means of an x-ray machine, Orszulak searched the book and found a double-edged razor blade, approximately one and three-quarter inches by seven-eighths inch, taped to page 451 near the binding. Plaintiff acknowledged that the book belonged to him, but stated that he did not know where the razor blade came from. Orszulak removed the razor blade from the book, marked and photographed it, and turned it over to the Captain's office (*id.*). Plaintiff was immediately placed in his cell under "keeplock"[1] status (Item 18, LeBaron Aff., ¶ 8).

Officer Orszulak's misbehavior report was reviewed by the Watch Commander, Lieutenant Donald LeBaron, on June 22, 1992. Lieutenant LeBaron determined that a Tier III Superintendent's hearing should be held, and authorized continuation of plaintiff's keeplock status pending the outcome of the disciplinary hearing.

Lieutenant Leroy Grant presided over the hearing, which was held on June 27, 1992. The hearing record reflects that plaintiff was served a copy of the misbehavior report by Corrections Officer B. Clark on June 22, 1992, and that plaintiff consulted inmate assistant C. Donnelly on June 25, 1992 (T. at 2).[2] The transcript of the hearing also reflects that plaintiff requested the appearance of Officer Clark as a witness to verify service of the misbehavior report, but Lt. Grant found it sufficient to note verification of service on the record without the need to call Officer Clark as a witness (T. at 2–3).

In defense of the charges, plaintiff stated at the hearing that the misbehavior report was deficient because it failed to contain mandatory language regarding the inmate's right to make a prehearing statement on the need for continued prehearing confinement, as required by the state regulations governing misbehavior report procedures[3] (T. at 4). Plaintiff also stated that Officer Orszulak failed to comply with prison directives for maintaining a chain of custody for articles confiscated from inmates[4] (T. at 4–5). Addressing the substance of the charges, plaintiff stated that he did not have access to the draft bags containing his property between the time when he was transferred to Attica from the Shawangunk Correctional Facility on approximately June 10, 1992, and June 21, 1992, when the razor blade was found in his book (T. at 5–7).

Officer Orszulak appeared as a witness, and was questioned by Lt. Grant about the circumstances of the search and the maintenance of a chain of custody for the razor

---

1. "Keeplock" is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates. *See* 7 N.Y.C.R.R. § 251–1.6; *see also Gittens v. Le-Fevre*, 891 F.2d 38, 39 (2d Cir.1989).

2. "T. at ——" refers to pages of the transcript of the Tier III Superintendent's disciplinary hearing held on June 27, 1992, attached as Ex. A to the affidavit of Donald Selsky (Item 18).

3. 7 N.Y.C.R.R. § 251–3.1(d)(3) (filed Jan. 31, 1992, effective Feb. 19, 1992) provides:

All misbehavior reports shall ... contain the following language:

\* \* \* \* \* \*

"If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent of Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement."

(Item 14, Ex. A).

4. New York State Department of Correctional Services Directive No. 4910, ¶ IV(C)(6), provides in relevant part:

All contraband items found are to be removed from the inmate's living quarters and properly identified and recorded. All articles confiscated (contraband and otherwise) shall be listed on [the] Inmate Misbehavior Report.... The Inmate Misbehavior Report shall clearly indicate to whom the articles were given for safekeeping.... The articles confiscated are to be forwarded to the Deputy Superintendent for Security Services with a copy of the Search/Contraband Report.... If the nature of the contraband found ... on the inmate's person warrants disciplinary action, specific mention of the contraband must be made in the Inmate Misbehavior Report. When the contraband is such that criminal charges may be brought against the inmate, it is important that the evidence be carefully preserved and the appropriate reports forwarded as soon as possible to the Deputy Superintendent for Security Services who may direct that the evidence be photographed.

(Item 21, Ex. A).

blade (T. at 8–9). Plaintiff then questioned Officer Orszulak about whether he removed his gloves when he opened the economics book (T. at 9–10) and whether he was aware of and followed directive 4910 pertaining to the chain of custody for the razor blade, the razor blade's wrapper, and the economics book the razor blade was found in (T. at 10–13). No questions were posed to Officer Orszulak regarding the language contained in, or missing from, the misbehavior report.

At the conclusion of the hearing, Lt. Grant found plaintiff guilty of the weapon and smuggling charges based on the information set forth in the misbehavior report and the testimony of Officer Orszulak, and imposed a penalty of 120 days keeplock with loss of telephone privileges, 60 days suspended and 120 days deferred, to commence June 21, 1992 and to end August 20, 1992, and loss of three months good time credit (T. at 14–15).

Plaintiff appealed this determination. On August 20, 1992 (the same date that plaintiff was released from keeplock), Donald Selsky, Director of the Department of Correctional Services Special Housing/Inmate Disciplinary Program, reversed Lt. Grant's hearing disposition for "[f]ailure to give inmate proper notice which indicates ability to write about pre-hearing confinement status" (Ex. B to Selsky Aff., Item 18). Pursuant to the reversal, all references to the disciplinary hearing were expunged from plaintiff's records, his phone privileges were restored, and the hearing officer's recommendation for loss of good time credit was withdrawn (Selsky Supp.Aff., Item 23, ¶¶ 3–5).

Plaintiff filed this action *pro se* on November 25, 1992 pursuant to 42 U.S.C. § 1983, alleging that he was denied due process and equal protection in violation of his rights under the fourteenth amendment, and was subjected to cruel and unusual punishment in violation of his rights under the eighth amendment, based on the following:

1. Lt. Grant's determination of guilt despite the absence of any evidence connecting plaintiff to the razor blade;

2. Lt. LeBaron's continuation of plaintiff's pre-hearing keeplock despite the fact that the misbehavior report did not contain the language required by 7 N.Y.C.R.R. § 251–3.1(d)(3);

3. Failure of the misbehavior report to contain the mandatory language concerning pre-hearing confinement;

4. Failure of the misbehavior report to follow the chain of custody requirements set forth in New York State Department of Correctional Services ("D.O.C.S.") Directive No. 4910; and

5. Failure of defendant Selsky to render a decision on his appeal until after his keeplock status had expired (Item 1, ¶¶ 8–15).

On February 16, 1993, defendant Kelly moved to dismiss the complaint as against him for failure to allege personal involvement (Items 8, 10). Defendants LeBaron, Grant and Selsky answered the complaint on February 17, 1993, asserting qualified immunity (Item 9). On February 23, 1993, the case was referred to the undersigned by Hon. John T. Elfvin pursuant to 28 U.S.C. § 636(b)(1)(A) to conduct pretrial proceedings. After a pretrial telephone conference with this court on March 22, 1993, the parties agreed to consent to have the undersigned conduct any and all further proceedings in the case. On May 28, 1993, Judge Elfvin signed the order of reference for that purpose (Item 16).

On June 14, 1993, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that the complaint fails to set forth any valid claims rising to the level of constitutional violations, and that the defendants are entitled to qualified immunity. Plaintiff filed his response on August 23, 1993. Meanwhile, by order dated March 10, 1994, this court ordered supplementation of the record to address pertinent issues raised in *Russell v. Scully,* 15 F.3d 219 (2d Cir.1993), *modified and petition for rehearing denied,* 15 F.3d at 222 (2d Cir.1994). Upon receipt of those supplemental materials, the matter was deemed submitted for decision.

## *DISCUSSION*

### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

■ Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)).

My review of the record indicates that there are no factual issues in dispute material to the resolution of plaintiff's claims for relief under § 1983. Those claims are entirely premised on the following: (1) sufficiency of the evidence presented at the disciplinary hearing, (2) failure to follow the procedures prescribed by D.O.C.S. rules and regulations regarding the inmate's right to be heard on the need for continued prehearing confinement and the chain of custody for confiscated articles, and (3) the length of time it took for plaintiff's appeal to be decided. Each of these claims are addressed in turn below.

## II. Plaintiff's Claims.

### A. *Sufficiency of the Evidence at the Disciplinary Hearing.*

■ Where an inmate disciplinary hearing may result in the loss of a protected liberty interest, such as the right not to be placed in administrative segregation, *see, e.g., Hewitt v. Helms,* 459 U.S. 460, 470–72, 103 S.Ct. 864, 870–72, 74 L.Ed.2d 675 (1983), due process requires that the inmate be afforded certain procedural protections, including (1) advance written notice of the charge, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in defense of the charge, (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action, and (4) support for the findings "by some evidence in the record." *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974)).

■ In this case, the record clearly demonstrates that there was "some evidence" to support Lt. Grant's hearing disposition finding plaintiff guilty of the charges presented. The misbehavior report and hearing testimony of Officer Orszulak, as well as photographic and other evidence, established an unmistakable link between plaintiff and the razor blade found in his economics book. The only evidence offered by plaintiff to disprove his connection with the razor blade was based on his assertion that his belongings were not in his control while en route from Shawangunk to Attica, and that someone else must have put the razor blade in his book during that time (T. at 6–7). Such "conjecture" and "surmise" cannot defeat summary judgment as a matter of law against plaintiff on his sufficiency of the evidence claim.

### B. *D.O.C.S. Rules and Regulations.*

Plaintiff's core allegation in this action is that the failure of the misbehavior report to include language regarding the inmate's right to make a written statement on the need for continued prehearing confinement, as required by 7 N.Y.C.R.R. § 251–3.1(d)(3),

and the failure of Officer Orszulak to follow the rules for maintaining a chain of custody for the items confiscated, as required by D.O.C.S. Directive No. 4910, constitute due process violations.

 When state law limits the imposition of administrative confinement—such as keeplock—by using mandatory language and by requiring specific substantive predicates, a liberty interest is created which may not be deprived without due process. *Gittens v. LeFevre*, 891 F.2d 38, 40 (2d Cir.1989). Thus, an inmate confined to administrative keeplock pending a disciplinary hearing must be afforded "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms, supra*, 459 U.S. at 476, 103 S.Ct. at 874. The notice and opportunity to be heard must be afforded within a reasonable time following the imposition of keeplock or other administrative confinement. *Gittens, supra*, 891 F.2d at 41. What is considered a "reasonable time" will depend on the particular situation being examined. *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990).

In *Gittens*, the plaintiff was placed in keeplock for seven days pending his disciplinary hearing, following receipt of a misbehavior report accusing him of unauthorized possession of other prisoners' transfer papers, in violation of prison rules. On each day of his prehearing confinement, the plaintiff complained to corrections officers about his keeplock status and attempted to contact the prison superintendent, arguing that he had been given permission to take the papers in question from a trash can in the prison library for use in starting a fire in an outdoor cooking stove. Each time he complained, he was informed that the review officer had continued to approve his confinement and that he would be released only after the disciplinary hearing on the underlying charge. The Second Circuit found that, under the circumstances, the prison's refusal to allow the plaintiff to make a written or oral statement until the disciplinary hearing denied him "the opportunity to avoid an improvident or wrongful administrative confine-

ment ...," *Gittens, supra*, 891 F.2d at 41, and that the failure of state regulations to provide "an adequate procedure for inmates to challenge keeplock until adjudication of the underlying disciplinary charge violates the minimal due process requirements described in *Helms*." *Id.* at 42.

Presumably in response to the *Gittens* decision, revised regulations were filed on January 13, 1992, effective February 19, 1992, requiring that *all* misbehavior reports contain language advising inmates subject to restriction pending a disciplinary hearing of the right to make a written statement prior to the hearing regarding the need for continued prehearing confinement. *See* 7 N.Y.C.R.R. § 251–3.1(d)(3), note 3 *supra*. Accordingly, the same due process concerns presented to the court in *Gittens* pertaining to the adequacy of the state's procedures for providing inmates the opportunity to be heard on their prehearing confinement "at a meaningful time and in a meaningful manner ...," *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), *quoted in Mathews v. Elridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), are not presented in this case. On June 22, 1992, at the time Officer Clark served plaintiff with a copy of the misbehavior report, the state's prison regulations provided the mechanism which the Second Circuit, in *Gittens*, found lacking.

Furthermore, plaintiff has not alleged here, as the plaintiff in *Gittens* did, that he requested the opportunity to make a statement on his confinement prior to the disciplinary hearing but was refused. Neither has plaintiff alleged that he did not receive notice of his right to challenge his prehearing confinement. *Cf. Randall v. Tokarz*, No. 90 Civ. 7989, 1994 WL 174031 (S.D.N.Y. May 5, 1994); *McMillan v. Healey*, 739 F.Supp. 153, 155 (S.D.N.Y.1990). The record reflects that plaintiff obtained the assistance of an inmate counselor on June 25, 1992, three days before the hearing. Additionally, both Lt. Grant and Lt. LeBaron have filed affidavits attesting to their belief that plaintiff was to have received a separate sheet advising him of his right to make a statement on prehearing confinement (Item 18). Despite these indica-

tions, there is nothing in the papers submitted to the court to indicate that plaintiff took any steps to assert his right to challenge his confinement prior to the Tier III disciplinary hearing. Instead, the record suggests that plaintiff waited until the hearing commenced to complain about the lack of notice in the misbehavior report. Yet, when presented with the opportunity at the hearing to question Officer Orszulak about the report, plaintiff failed or declined to do so.

■■■■ All that is alleged in the complaint is that the failure of the misbehavior report to contain the language required by 7 N.Y.C.R.R. § 251–3.1(d)(3) and Directive 4910 is, in itself, a violation of constitutional dimensions. However, a due process claim premised upon a prison official's failure to follow state procedural rules or regulations, standing alone, is not a sufficient basis for a § 1983 claim. *Cofone v. Manson,* 594 F.2d 934, 938 (2d Cir.1979); *James v. Artuz,* No. 93 Civ. 2056, 1994 WL 174005 (S.D.N.Y. May 4, 1994); *Johnson v. Coughlin,* No. 90 Civ. 1731, 1992 WL 6227 (S.D.N.Y.1992); *Afrika v. Selsky,* 750 F.Supp. 595, 602 (S.D.N.Y. 1990); *Smallwood–El v. Coughlin,* 589 F.Supp. 692, 699 (S.D.N.Y.1984); *Franciotti v. Reynolds,* 550 F.Supp. 146, 147 (S.D.N.Y. 1982).

■■■ Moreover, the record before the court clearly shows that, upon discovering the presence of a concealed razor blade among plaintiff's belongings, Officer Orszulak had "reasonable grounds to believe that [plaintiff] should be confined to his cell . . . because he represent[ed] an immediate threat to the safety, security or order of the facility or [a]n immediate danger to other persons or to property," and took "reasonable and appropriate steps to so confine [plaintiff]." 7 N.Y.C.R.R. § 251–1.6(a). Thus, to the extent that plaintiff's complaint alleges that his administrative confinement pending hearing violated "substantive due process," *see Lowrance v. Achtyl,* 20 F.3d 529 (S.D.N.Y.1994), that claim must fail. *Id.* at 535–37.

As provided in Rule 56(e):

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Thus, once the moving party has met its burden of demonstrating the absence of a genuine issue of fact, the burden shifts to the nonmoving party to "present affirmative evidence . . . from which a jury might return a verdict in its favor." *Anderson v. Liberty Lobby, supra,* 477 U.S. at 257, 106 S.Ct. at 2514.

Here, defendants have demonstrated that plaintiff's due process claims rest entirely on the grounds that defendants' conduct violated state procedural regulations, and *not* on the grounds that failure to give him notice of the right to challenge prehearing confinement or failure to maintain a chain of custody were themselves violative of federal constitutional standards of due process. *See James v. Artuz, supra,* 1994 WL 174005, at *6. In the absence of any material factual dispute, summary judgment is appropriate in favor of defendant on plaintiff's due process claim.

■■■ Defendants also contend that any due process violations that may have occurred by means of Officer Orszulak's failure to include the language required by 7 N.Y.C.R.R. § 251–3.1(d)(3), or to follow the prison's chain of custody procedures as set forth in Directive 4910, were cured by defendant Selsky's reversal and expungement of the hearing disposition on appeal. *See, e.g., Russell v. Scully, supra,* 15 F.3d at 222 (failure to conduct hearing within seven days of administrative segregation, or to decide appeal within sixty days of hearing determination, did not result in due process violation since reversal on appeal cured any procedural defects) (citing with approval *Williams v. Tavormina,* No. 89–1247T, 1992 WL 487335 (W.D.N.Y.1992) (Telesca, C.J.) (due process not violated when appeal corrected procedural errors)). However, the Second Circuit has recently held that reversal of a disciplinary

hearing decision on administrative appeal does not cure the wrongful deprivation of a liberty interest resulting from a due process violation at a prisoner's disciplinary proceeding. *Walker v. Bates,* 23 F.3d 652 (2d Cir. 1994); *Mays v. Mahoney,* 23 F.3d 660 (2d Cir.1994).

Finally, defendants contend that even if plaintiff has met his burden of establishing a genuine issue of material fact as to whether his due process rights were violated, they are entitled to qualified immunity based on their official actions in processing the misbehavior report and conducting the disciplinary hearing and appeal. Because I find that plaintiff has not met his summary judgment burden, I do not find it necessary to address defendants' qualified immunity defense.

### C. Delay in Determination of Appeal.

■ Plaintiff also claims that Defendant Selsky's failure to decide his appeal until the day his keeplock status expired denied him due process and equal protection, and constituted cruel and unusual punishment. However, as noted in *Russell v. Scully, supra,* the federal constitution does not require New York State to "give [inmates] the right to avoid administrative confinement pending ... appeal." 15 F.3d at 222 (citing *Hewitt v. Helms, supra,* 459 U.S. at 467, 103 S.Ct. at 869).

Accordingly, I find that there are no genuine issues of material fact as to whether the evidence was sufficient to sustain the hearing disposition, or whether defendants' conduct violated the due process clause or any other constitutional or statutory provision sufficient to sustain a cause of action under § 1983. Defendants are therefore entitled to entry of judgment dismissing the complaint as a matter of law.

### CONCLUSION

For the reasons set forth herein, defendants' motion for summary judgment (Item 18) is granted dismissing plaintiff's complaint in its entirety.

**SO ORDERED.**

