Kenneth GASTON, Plaintiff–Appellant,

v.

Thomas A. COUGHLIN, III; Donald Selsky; Lt. Grant; Lebaron, Lt.; Hans Walker; Frank Irvin; Edward Dann; John Doe, Confidential Informant, Defendants–Appellees.

No. 98–2943.

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 2000.

Decided May 7, 2001.

Tim O'Neal Lorah, New York, NY, (Daniel J. Kramer, Schulte Roth & Zabel, New York, NY, on the brief) for Plaintiff–Appellant.

Marcus J. Mastracco, Assistant Solicitor General, Albany, NY, (Eliot Spitzer, Attorney General of the State of New York, Nancy A. Spiegel, Assistant Solicitor General, Peter H. Schiff, Senior Counsel, on the brief) for Defendants–Appellees.

Before KEARSE, WINTER, and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge.

Plaintiff Kenneth L. Gaston, a New York State ("State") prisoner, appeals from a judgment of the United States District Court for the Western District of New York, David G. Larimer, *Chief Judge*, dismissing his complaint brought under 42 U.S.C. § 1983 (1994), alleging principally (1) that various officials and employees of the State's Department of Correctional Services ("DOCS") violated his due process rights by sentencing him to a two-year (later reduced to one-year) period of confinement in punitive segregation on the basis of an unreliable hearsay statement of an undisclosed informant, and (2) that the conditions in which he was confined were frigid and unsanitary, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The district court granted summary judgment dismissing the complaint on the principal grounds (1) that the evidence presented at Gaston's ultimate disciplinary hearing was not so insubstantial as to make his conviction a violation of due process, and (2) that the conditions of his confinement were not so severe as to constitute cruel and unusual punishment. The court also found the due process claims dismissable on the ground of qualified immunity and found the Eighth Amendment claims flawed for lack of any allegation of personal involvement of the named defendants in that alleged violation. Gaston challenges these rulings on appeal. For the reasons that follow, we affirm the dismissal of the due process claims, but we vacate and remand with respect to the Eighth Amendment claims as to two defendants.

## I. BACKGROUND

In May 1990, Gaston was a prisoner at the State's Auburn Correctional Facility ("Auburn"), and was vice president of the Inmate Liaison Committee ("ILC"). Defendant Hans Walker was Superintendent of Auburn; defendant Frank Irvin was Auburn's First Deputy Superintendent; defendant Edward Dann was its Deputy Superintendent for Security. For purposes of this appeal, the facts are not substantially in dispute.

On May 19, a group of prisoners at Auburn staged a food strike, refusing to eat lunch and dinner in two of the mess halls. Irvin and Dann promptly met with ILC members, including Gaston, all of whom denied any involvement in the incidents. Gaston stated that he had been in his cell during the food strike, had not been involved, and had no personal knowledge as to its organization or execution. Irvin asked the ILC members attending the meeting to help determine the reasons for the boycott by canvassing the inmate population.

Shortly after the meeting, a confidential informant reported to Irvin that the ILC, and specifically Gaston, had in fact organized the boycott. Based on that information, Dann prepared a misbehavior report dated May 21, 1990 (the "Report"), charging Gaston with violation of DOCS Rule 104.12, which states that "[i]nmates shall not lead, organize, participate, or urge other inmates to participate, in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility." 7 N.Y.C.R.R. § 270.2. On May 21 Gaston was transferred to the Attica Correctional Facility ("Attica"), where he was placed in segregated confinement in the Special Housing Unit ("SHU"). He was served with the Report on May 23.

Based on the Report, a disciplinary hearing was held on May 25 and 31, 1990, presided over by defendant Donald LeBaron, a DOCS lieutenant at Attica. Gaston requested, *inter alia*, a copy of the confidential information on which the Report was based; his requests were denied. At the close of the hearing, at which only Gaston testified, LeBaron found Gaston guilty, stating that the evidence relied on was "[t]he written report by Deputy Superintendent of Security Dann and the confidential information that I have been given that directly involves you and states that you were the organizer of the demonstration that took place in the mess hall [*sic*] on 5/19/90." (Hearing Transcript, May 31, 1990, at 13.) LeBaron sentenced Gaston to 730 days of confinement in SHU, retroactive to May 21.

Gaston filed an administrative appeal. On August 8, 1990, defendant Donald Selsky, DOC's Director of Special Housing/Inmate Disciplinary Programs, reversed on the ground that LeBaron had failed to conduct an independent assessment of the reliability of the confidential informant.

On August 20, 1990, Gaston was again served with the Report and was scheduled for a second hearing, this one to be presided over by defendant Leroy Grant, a DOCS lieutenant at Attica. Gaston requested that Irvin, Dann, and three prisoners be called as witnesses, and he asked for copies of the confidential information, the videotape of the mess hall incidents, any incident report filed with respect to the strike, and the mess hall attendance sheets. Grant called Irvin and Dann as witnesses, along with two of the prisoners Gaston requested, declining to call the third prisoner on the ground that his testimony would be irrelevant. Grant denied Gaston's request for documents and the mess hall videotape; but Grant himself eventually viewed the tape and made the

finding that it did not clearly show Gaston personally participating in the strike.

The second disciplinary hearing was held on August 24 and 31, 1990. Part of it was conducted in the presence of Gaston, with some of the witnesses testifying by telephone; some of the testimony on August 24 was given outside of Gaston's presence and was sealed. (Except to the extent described or quoted herein, that transcript remains sealed.) With Gaston in attendance, Irvin testified that about a half-hour after the May 19 meeting at which information on the strike was sought from ILC members, the confidential informant told Irvin that the strike had been organized by several ILC members including Gaston. Irvin stated that the reliability of this confidential informant had been proven through "various administrative sources." (Open Hearing Transcript, August 31, 1990 ("August 31 Open Tr."), at 13.) Dann testified that his Report had been based on the information given by the confidential informant to Irvin and relayed by Irvin to Dann.

In the confidential part of the hearing, to which Gaston was not privy, Grant received testimony from Irvin and Walker. Irvin identified the confidential informant by name (hereafter "CI") and testified to the details of their conversation:

> [CI] told me that [ ] there was a conspiracy [ ] involving [ ] some of the members of the ILC ... to [ ] start this [ ] demonstration..... [T]hey had prepared [ ] directions on a written [ ] piece of paper and passed it out to most of the inmate population [ ] slowdown in the messhall [sic ].[H]e identified inmate [ ] Gaston [along with one other inmate named by Irvin and another unnamed by Irvin, as] the ring leaders. [ ] I asked him why he [ ] decided to come forth and give me that information and he says ... it was ridiculous, that [sic ]

for them to sit up and lie .... and say they didn't know anything about it.

(Confidential Transcript dated August 24, 1990 ("Conf.Tr."), at 1–2 ("[ ]" - "uh" in original).) Irvin also testified that the informant said he was not seeking any special treatment from prison officials in return for his information. Irvin stated that he had proceeded to check on the informant's reliability. He testified that

> [CI] further indicated that in the past he had given information to Superintendent Walker ... and that [ ] occasionally he did come forth with information to the administration when it appeared that it would disrupt activities in the facility. I confirmed this with Superintendent Walker and he [ ] he did say that [CI] had given him information when he was Security Dep. at Attica, that turned out to be accurate....
>
> Grant: [ ][H]e in other words he said that the information that [CI] had gave [sic ] was almost always reliable or was always reliable?
>
> Irving [sic ]: He indicated that the information that [CI] had given him at Attica on occasion had been accurate and reliable.

(Conf. Tr. at 2 ("[ ]" = "uh" in original).)

Walker likewise testified that he had been contacted by Irvin on May 19 with respect to the informant's reliability. Walker confirmed that he had previously received from the informant information that had proven reliable:

> [Irvin] indicated that ... an inmate by the name of [CI] gave him some information on who was supposedly behind the demonstration that we had here at Auburn. [ ][T]he inmate that gave him the information was an inmate by the name of [CI] who I was familiar with from [ ] mostly from Attica when I used to work there and [ ] that ... inmate

[CI] indicated to [Irvin] . . . that he had given me information before in the past when he was at Attica and I was aware of him and I indicated to Mr. Irving [*sic* ] yes he had given me some information in the past and predominately it was [ ] pretty much on the money that he was [ ] I would say would probably be reliable.

(Conf. Tr. at 3–4 ("[ ]" = "uh" in original).)

At the close of the hearing on August 31, Grant found Gaston guilty of the charged infraction. He stated that his ruling was based on Dann's Report, on the testimony of Irvin as to the statements of the informant identifying Gaston as an organizer of the food strike, and on the testimony of Walker as to the informant's past reliability. Grant sentenced Gaston to 730 days in SHU.

Gaston again filed an administrative appeal. On November 2, 1990, Selsky affirmed the finding of Gaston's guilt but reduced the sentence to 365 days. Gaston was released from SHU on May 21, 1991, after serving 365 days. Thereafter, Gaston successfully brought an Article 78 proceeding in New York Supreme Court, Appellate Division, which set aside his disciplinary conviction because there was "no evidence corroborating [the informant's] information." *Gaston v. Coughlin,* 182 A.D.2d 1085, 1085, 582 N.Y.S.2d 878, 879 (4th Dep't 1992). The Appellate Division stated that "[t]he record of [Gaston's] Tier III rehearing shows that there was no evidence against [Gaston] except the conclusory statement of the informant, which was related by the correction officer who received the information." *Id.* It reversed the determination of Gaston's guilt and ordered that all references to the charges be expunged from his record.

In the meantime, in 1991, Gaston commenced the present action *pro se* under 42 U.S.C. § 1983. As amended, the complaint alleged that the conduct of the disciplinary hearings violated his right to due process. The complaint also alleged, *inter alia,* that the conditions of Gaston's confinement in SHU were inhumane and violated his rights under the Eighth Amendment, principally because there were numerous broken windows on his cellblock, which were not repaired for the entire winter. Gaston was thus subjected for a prolonged period to freezing temperatures, impelled to wear all of his issued clothing at all times, even when sleeping. The complaint also alleged that mice were constantly entering his cell, and that on several days the area directly in front of Gaston's cell was filled with human feces, urine, and sewage water. The complaint alleged that Gaston had filed a grievance about the broken windows, to no avail, and that he had complained to the area sergeants "and company officers" of the unsanitary conditions, but his complaints were ignored.

The parties agreed that the case would be referred to a magistrate judge for all purposes, including the entry of judgment, and that the appeal, if any, from the magistrate judge's ruling would be taken to the district court, as was then authorized, *see* 28 U.S.C. § 636(c)(4) (1994). Following discovery, defendants moved for summary judgment on all of the claims asserted in the complaint. The magistrate judge granted the motion and entered judgment dismissing the complaint in its entirety. Following a procedural detour (an abortive appeal directly to this Court), Gaston appealed to the district court. In a Decision and Order dated October 5, 1998 ("Opinion"), the district court upheld the rulings of the magistrate judge. The court concluded that Gaston's due process rights were not violated at the first disciplinary hearing because the ruling based on that hearing was reversed on administrative

appeal, and because Gaston was retried, was again found guilty in a hearing that did not violate his due process rights, and was credited with the time he had served as a result of his first conviction. He thus suffered no injury. The court also concluded that Gaston's rights had not been violated at the second disciplinary hearing. Notwithstanding the Appellate Division's conclusion that the evidence at the second hearing was insufficient to support the finding of guilt as a matter of state law, the district court noted that the standard for determining whether the finding of guilt violated Gaston's federal constitutional right to due process is whether there was at least " 'some evidence' " to support the decision. Opinion at 4 (quoting, with emphasis, *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). The district court concluded that Gaston's due process claims must fail because there was some evidence supporting Grant's decision.

With respect to the Eighth Amendment claims, the court ruled that

the conditions of which plaintiff complains were neither severe nor protracted enough to rise to the level of an Eighth Amendment violation. Moreover, while it is true that the Magistrate Judge did not expressly address plaintiff's allegation that he was subjected to subfreezing temperatures during the Winter of 1991 because some of the windows in his cellblock were broken, after reviewing the record I conclude that summary judgment for defendants was properly granted on this claim. Plaintiff's undetailed allegations do not show that defendants were personally involved in this alleged violation of plaintiff's rights, which is a prerequisite to an award of damages under § 1983.

*Id.* at 7–8 (internal quotation marks omitted).

This Court granted Gaston permission to appeal the district court's decision with respect to the due process and Eighth Amendment claims described above, and we appointed counsel to represent him.

## II. DISCUSSION

On appeal, Gaston principally pursues his contention that his due process rights at the disciplinary hearings were violated by the hearing officers' relying on the hearsay statements of the informant without making an independent assessment of the informant's credibility. In addition, he contends that his Eighth Amendment claims with respect to the conditions of his confinement in SHU should not have been summarily dismissed. Assuming that Gaston's confinement in SHU for 365 days constituted the deprivation of a liberty interest within the meaning of *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (a prisoner punished after a disciplinary hearing has not thereby been deprived of a liberty interest unless the punishment imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life"); *see, e.g., Colon v. Howard*, 215 F.3d 227, 231 (2d Cir.2000) ("The longest confinement in normal SHU conditions that we have ruled was not shown to meet the *Sandin* standard was 101 days."), we conclude that the district court correctly ruled that the record is insufficient to permit a finding that that deprivation resulted from a denial of due process. As to the Eighth Amendment claims, however, we conclude that the judgment should be vacated and the matter remanded for Gaston to present evidence, if he can, of the personal involvement of LeBaron and Grant.

## A. *The Due Process Claims*

■ A prisoner may not properly be deprived of a cognizable liberty interest without due process of law. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 555, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court ruled that where the prisoner claims he was denied due process in a prison disciplinary hearing because he was found guilty on the basis of insufficient evidence, the claim must be rejected if there was at least "some evidence" to support the decision. *Id.* at 455, 105 S.Ct. 2768. The Court stated that

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, *the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.*

*Id* at 455–56, 105 S.Ct. 2768 (emphasis added).

■ This Court has ruled that the "some evidence" standard may be met even where the only evidence was supplied by a confidential informant, "as long as there has been some examination of indicia relevant to [the informant's] credibility." *Giakoumelos v. Coughlin,* 88 F.3d 56, 61 (2d Cir.1996) (internal quotation marks omitted). We have not yet resolved the question of "whether an inmate has a right to an independent assessment of the credibility of confidential informants and a contemporary record of that assessment," *Richardson v. Selsky,* 5 F.3d 616, 622 (2d Cir.1993); however, we have stated that even if due process does require a hearing officer to conduct an independent assessment of the informant's credibility, that "would not entail more than some examination of indicia relevant to credibility rather than wholesale reliance upon a third party's evaluation of that credibility," *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir. 1993).

■ In the present case, the evidence at Gaston's second hearing met the "some evidence" standard. Irvin testified to his conversation with the informant and described factors allowing an assessment of whether the informant had a motive to fabricate his accusation of Gaston, to wit, (a) that the informant stated he was not requesting any favor in return for his information, and (b) that the informant indicated he had come forward because he thought it inappropriate for Gaston to organize the strike and then disown any involvement in or knowledge of it and allow his constituents alone to bear the consequences. Irvin also testified that he attempted to verify the informant's reliability by checking with Walker, whom the informant stated he had served as a confidential informant in the past.

Grant, as hearing officer, did not simply rely on Irvin's report of the informant's statement or on Irvin's assessment of the informant's credibility. He called Walker as a witness, and Walker testified that the informant had in the past given him information that was reliable.

Gaston argues that the statements by Walker as to his past experience with the informant should not be viewed as any evidence of reliability because they indicated that the informant had been reliable only *"on occasion."* (Gaston brief on appeal at 28 (emphasis in original).) We assume that he so interprets Irvin's testimony that Walker "indicated that the information that [CI] had given him at Attica on occasion had been accurate and reliable." (Conf. Tr. at 2.) While this

fragment, standing in isolation, does not make clear whether the phrase "on occasion" was linked to the words that preceded or the words that followed, Irvin's earlier testimony was that the informant stated that "occasionally he did come forth with information to the administration." *Id.* Both that earlier testimony and the testimony as a whole strongly suggest that the "on occasion" phrase on which Gaston relies was meant to indicate that information had been provided only sporadically rather than that its accuracy was infrequent. Certainly the hearing officer was allowed to so interpret it.

In sum, given the evidence at the second hearing, including the informant's credible explanation as to why he had come forward, his statement that he sought no favor in return, and his past proven reliability, we cannot conclude that there was not "some evidence" to support the hearing officer's ruling. Accordingly, the second hearing did not deprive Gaston of due process.

■ Finally, we also agree with the district court that Gaston's confinement in SHU was entirely attributable to the ruling following the second hearing, given that the result of the first hearing was administratively overruled and that Gaston's sentence following the second hearing credited his prior time in SHU. Accordingly, the result of the first hearing did not deprive Gaston of due process. *See Horne v. Coughlin,* 155 F.3d 26, 31 (2d Cir.1998) (where all findings and penalties at first hearing were vacated, and all penalties prisoner suffered were imposed at his second hearing, court need not consider allegation that due process was denied at first hearing).

B. *The Eighth Amendment Claims*

■ While the Eighth Amendment's prohibition against cruel and unusual punishment "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the conditions of confinement must be at least "humane," *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is "objectively, sufficiently serious" that he was denied "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of the defendant official, such as deliberate indifference to inmate health or safety. *Id.* at 834, 114 S.Ct. 1970 (internal quotation marks omitted). A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates. *See, e.g., Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983. *See, e.g., id.; Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

We have held that an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold. In *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988), for example, we reversed the grant of summary judgment in favor of defendants where there was evidence that the prisoner plaintiff had been deliberately exposed to bitter cold in his cell block for three months. *See also Wright v. McMann,* 387 F.2d 519, 526 (2d Cir.1967) (vacating a dismissal on the pleadings where the complaint alleged that inmates were deliberately exposed to bitter cold and deprived

of basic hygiene products while in solitary confinement). *Accord Dixon v. Godinez,* 114 F.3d 640, 643–45 (7th Cir.1997) (vacating summary judgment and remanding for determination of duration and severity of prisoner's exposure to cold); *Chandler v. Baird,* 926 F.2d 1057, 1065–66 (11th Cir. 1991) (vacating summary judgment where prisoner testified that he was denied basic sanitation items for two days and that his cell was frigid for 16 days during which he was denied bedding and all clothing except undershorts); *Beck v. Lynaugh,* 842 F.2d 759, 761 (5th Cir.1988) (vacating summary dismissal of claim that prisoners were exposed to winter cold due to broken windows).

In the present case, the complaint alleged that Gaston's Eighth Amendment rights were violated principally by unsanitary conditions and prolonged cold. It alleged that mice were constantly entering his cell, and that for several consecutive days and one noncontiguous day in July 1990, the area directly in front of his cell was filled with human feces, urine, and sewage water. It also alleged that during the following winter, there were broken windows in Gaston's cell block, and that despite numerous complaints, the windows remained unrepaired for the entire winter, exposing inmates to freezing and sub-zero temperatures. Gaston's brief on appeal states, asking that judicial notice be taken, that the monthly temperature data provided by the United States Historical Climatology Network station located just 10 miles from the site of Gaston's incarceration revealed average monthly temperatures from November 1990 through March 1991 ranging from 22.63 to 40.64 degrees Fahrenheit. Thus Gaston was subject to temperatures near or well below freezing for a five-month period.

The district court apparently viewed all of Gaston's Eighth Amendment allegations as failing to state a claim on which relief can be granted. *See* Opinion at 7 ("the conditions of which plaintiff complains were neither severe nor protracted enough to rise to the level of an Eighth Amendment violation"). As an alternative ground, the court stated the complaint should be dismissed because it failed to allege any personal involvement by any of the named defendants in the conditions of confinement. We reach different conclusions.

As to the complaint that Gaston was subjected to freezing temperatures throughout the winter, defendants concede that the complaint "appears to set forth a colorable Eighth Amendment claim," (Defendants' brief on appeal at 26). Given the authorities we have discussed above, we agree. Dismissal on this basis was inappropriate. Defendants ask us to uphold the dismissal, however, on the court's alternative ground, *i.e.,* lack of an allegation of the individual defendants' personal involvement. They state that Gaston's only relevant assertion appeared in his memorandum of law in the district court opposing summary judgment and consisted of a "one-line conclusory statement that Lt. LeBaron and Lt. Grant had 'actual knowledge of the events that occurred in Attica's SHU because they made daily rounds and were directly responsible for placing plaintiff in [the] inhumane conditions.'" (*Id.* at 27 (quoting Gaston Memorandum of Law dated April 16, 1993 ("Gaston April 1993 Memorandum"), at 26).) With respect to LeBaron and Grant, we decline defendants' request to affirm the summary dismissal on this basis.

In seeking summary judgment dismissing the Eighth Amendment claims, defendants did not submit an affidavit or other sworn evidence from LeBaron or Grant denying that they had knowledge of or responsibility for the freezing and unsani-

tary conditions to which Gaston claimed he was subjected in SHU. Nor did defendants suggest that there was no genuine factual dispute as to whether they had any personal involvement; their statement of the material facts assertedly not in dispute stated simply that "[n]one of the present defendants [wa]s *alleged* to have been assigned to or present in the Attica SHU on these occasions, such that they could be found to have been involved personally in the noxious conditions of which plaintiff [*sic* ] complains." (Defendants' Statement [pursuant to the predecessor to Local Rule 56] dated March 8, 1993 ("Defendants' Local Rule 56 Statement"), ¶ 36 (emphasis added).) Since defendants did not support their lack-of-personal-involvement contention with any documentation of the sort envisioned by Fed.R.Civ.P. 56(e), Gaston was not required, in order to defeat summary judgment, to respond with such documentation, *see, e.g., St. Pierre v. Dyer*, 208 F.3d 394, 404–05 (2d Cir.2000). We conclude that Gaston's statement that LeBaron and Grant had actual knowledge of the inhumane conditions to which he was subjected in SHU—which we do not consider conclusory because it was premised on the assertion that those men "made daily rounds" of SHU (Gaston April 1993 Memorandum at 26)—should have led the district court to order further proceedings with respect to the Eighth Amendment claims against LeBaron and Grant.

 Finally, as to the claims of unsanitary conditions, defendants urge affirmance on the ground that the conditions did not descend to the level of an Eighth Amendment violation because they were "temporary" (Defendants' brief on appeal at 29), as the excrement of which Gaston complained "w[as] cleaned up by inmate porters" (Defendants' Local Rule 56 Statement ¶ 35). We note that defendants did not dispute Gaston's assertion that the cor-

ridor was not cleaned for several days, despite repeated complaints. We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end.

 We conclude that the Eighth Amendment claims of frigid temperatures, rodent infestation, and unsanitary conditions directly outside Gaston's cell, to the extent asserted against LeBaron and Grant, should be reinstated. However, there appears to be no basis for reinstatement of any of these claims against Irvin, Walker, Dann, or Selsky, who were not assigned to Attica during the period at issue. Gaston has not asserted any personal involvement by those defendants. Nor has he asserted personal involvement by defendant Thomas A. Coughlin, III, the DOCS Commissioner. Gaston did not indicate that any complaints of the conditions discussed above were communicated to Coughlin; and Coughlin's sworn answers to interrogatories served by Gaston denied all knowledge of these conditions. Accordingly, we affirm the dismissal of the Eighth Amendment claims to the extent they were asserted against Irvin, Walker, Dann, Selsky, and Coughlin.

## CONCLUSION

We have considered all of the parties' arguments in support of their respective positions on this appeal. We vacate so much of the judgment as dismissed the Eighth Amendment claims discussed above against LeBaron and Grant, and we remand for further proceedings on those claims consistent with the foregoing. We leave it to the district court to decide whether to require a new pleading; and we do not foreclose the possibility that, after appropriate discovery, a new summary judgment motion by one or both of

the defendants may be made. We of course express no view on the merits.

In all other respects, the judgment is affirmed. No costs.