**L. Antonia CODLING, Plaintiff–Appellant,**

v.

**CITY OF NEW YORK and Stephen Hughes, Police Lieutenant, New York City, Defendants–Appellees.**

**Docket No. 02–9215.**

United States Court of Appeals, Second Circuit.

June 23, 2003.

Daniel M. Perez, Law Office of Ronald L. Kuby, New York, NY, for Appellant.

Paul F. Herzfeld (Michael A. Cardozo, Corporation Counsel of the City of New York, Francis F. Caputo, of counsel, David A. Kanarek, law student on the brief) New York, NY, for Appellee.

Present: SACK, SOTOMAYOR, Circuit Judges, and DANIELS,* District Judge.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED in part and VACATED and REMANDED in part.

On Saturday, March 18, 2000, Defendant–Appellee Stephen Hughes, a lieutenant with the New York Police Department, arrested Plaintiff–Appellant L. Antonia Codling, a staff attorney with the Legal Aid Society. Codling was attending a demonstration and march protesting police misconduct in midtown Manhattan as a designated "legal observer." Hughes charged Codling with disorderly conduct in violation of N.Y. Penal Law § 240.20(5) and harassment in violation of N.Y. Penal Law § 240.26(1) for actions that are vigorously disputed and are discussed below. The New York Criminal Court (Neil E. Ross, *Judge*) granted Codling's motion to dismiss the charges in the interests of justice pursuant to N.Y.Crim. Proc. Law § 170.40.

On April 5, 2001, Codling filed a complaint under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York against Hughes and the City of New York, alleging, *inter alia*, that she was subject to false arrest and malicious prosecution. *Codling v. City of New York*, No. 01 Civ. 2884, 2002 WL 31002812, at *1, 2002 U.S. Dist. LEXIS 16547, at *2 (S.D.N.Y. Sept. 5, 2002). In an opinion dated September 5, 2002, the district court (Robert W. Sweet, *Judge*), granted Hughes's motion for summary judgment, concluding that although a genuine issue of material fact existed as to whether there was probable cause to arrest Codling, qualified immunity protected Hughes from suit. *Id.*, 2002 WL 31002812, at *4–*8, 2002 U.S. Dist. LEXIS 16547, at *9–*22. The district court dismissed the claims against the City defendant because Codling had failed to demonstrate that the municipality itself had a custom or policy that led to the deprivation of her rights as required by *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and also dismissed the pendent state law claims. *Codling*, 2002 WL 31002812, at *8–*9, 2002 U.S. Dist. LEXIS 16547, at *23–*26. Judgment was entered on September 13, 2001.

On appeal, Codling contests only the district court's grant of summary judgment with respect to Hughes. She argues that the district court erred in concluding that Hughes was protected by qualified immunity. We agree that the district court so erred.

In order to defeat Codling's claim of false arrest on a motion for summary judg-

---

* of the United States District Court for the Southern District of New York, sitting by designation.

ment, Hughes had to show that probable cause existed and that there was "no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* A showing of probable cause similarly defeats a claim of malicious prosecution. *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998).

The facts that precipitated Codling's arrest are very much in dispute. According to Hughes, while Hughes was using a megaphone to direct pedestrian traffic, Codling approached him and intentionally pushed the megaphone into his face, causing him pain. Affidavit of Stephen Hughes, April 2, 2002. According to Codling, Hughes approached Codling and "intentionally placed the bullhorn within a couple inches of [her] ear and made [an] announcement. Reflexively, [she] raised [her] hand to shield [her] ears because the bullhorn was so painful." Affidavit of L. Antonia Codling, March 13, 2002. Two other "legal observers" who were standing with Codling during the incident corroborated Codling's version of the facts. Lisa R. Edwards–Nazario testified in her affidavit that Hughes approached them and "intentionally raised the bullhorn to his mouth, and started yelling into the bullhorn." Affidavit of Lisa R. Edwards–Nazario, March 13, 2002. In his affidavit, Jorge Irizarry stated that Hughes "stopped approximately 3 to 4 inches from Ms. Codling. The Lieutenant then raised the bullhorn within two inches of Ms. Codling's ear," and spoke into it. Affidavit of Jorge Irizarry, March 13, 2002. Both Irizarry and Edwards–Nazario described Co-

dling's response to the painful stimulus as reflexive.

The defendants argue that Codling cannot contend that Hughes intentionally aimed the megaphone at her because Codling testified at her N.Y. Gen. Mun. Law § 50–h hearing that Hughes could not see her. Yet Codling merely stated, in explaining why she raised her hand, that "somebody walks up to you with a bullhorn and they can't see you, I guess that's what the normal person would do." Transcript of N.Y. Gen. Mun. Law § 50–h Hearing of L. Antonia Codling, June 5, 2000, at 23. This statement does not contradict Codling's allegation, supported by the affidavits of Irizarry and Edwards–Nazario, that Hughes first approached her and then lifted the megaphone to his face. This statement merely indicates that once he had lifted the megaphone to his face Hughes could no longer see her. Furthermore, Edwards–Nazario testified that Hughes stated to her immediately after the bullhorn incident: "You saw what she did; she pushed the megaphone in my face." This statement by Hughes permits an inference that he did see the nature of Codling's action that resulted in contact with the bullhorn. A jury is free to credit this or other testimony by the witnesses as to what Hughes could see.

As the district court correctly concluded in its discussion of probable cause, drawing all inferences in favor of Codling, as we must on summary judgment, *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir. 1999), *cert. denied,* 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000), "there remains a factual question as to Hughes' own actions which motivated Codling to act in the way she did." *Codling,* 2002 WL 31002812, at *5, 2002 U.S. Dist. LEXIS 16547, at *15. If, as Codling, Irizarry and Edwards–Nazario testified in their affidavits, Hughes intentionally aimed the mega-

phone at Codling, and even more so if he saw the allegedly reflexive nature of Codling's reaction, then a juror could reasonably believe that Hughes knew that any contact between the megaphone and Codling's hand was merely reflexive and precipitated by Hughes's own behavior. On this version of the facts, Hughes lacked probable cause to arrest Codling.

Although this factual dispute is also dispositive of the qualified immunity inquiry, the district court concluded that Hughes was protected from both the false arrest and malicious prosecution claims by qualified immunity. An arresting officer is entitled to qualified immunity on a claim of arrest without probable cause and of malicious prosecution if:

> either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.

*Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Viewing the facts in the light most favorable to Codling, it was not objectively reasonable for Hughes or any reasonable officer in his situation to believe that probable cause existed because Hughes knew that Codling's response was precipitated by his own actions. We therefore conclude that the district court erred in granting Hughes's motion for summary judgment on grounds of qualified immunity.

Because the district court found that qualified immunity protected Hughes from Codling's claim of malicious prosecution, the district court did not consider whether the other elements of a claim of malicious prosecution were met. *See Murphy,* 118 F.3d at 947 ("In order to state a claim for the tort of malicious prosecution under New York State law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." (citation and internal quotation marks omitted)). We leave it to the district court to consider whether Codling sufficiently alleged these elements should Hughes raise the issue on remand.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED in part with respect to the City defendant, and VACATED and REMANDED in part with respect to the individual defendant.