Derrick S. WILLIAMS, Plaintiff,

v.

Mr. CARBELLO of Housekeeping et al., Defendants.

No. 08 Civ. 4718 (VM).

United States District Court, S.D. New York.

Oct. 2, 2009.

375

Derrick S. Williams, Beacon, NY, pro se.

Thaddeus Jeremiah Hackworth, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se plaintiff Derrick S. Williams ("Williams") filed this action asserting a violation of his constitutional and statutory rights under 42 U.S.C. § 1983 (" § 1983") against three current or former officials of the New York City correction facility at Riker's Island ("Riker's"): Mr. Carbello of housekeeping ("Carbello"), chief medical officer Dolores Curbelo M.D. ("Curbelo"), and Warden Mark A. Hughes ("Hughes") (collectively "Defendants"). Williams's claims relate to a hip infection he allegedly contracted from an unsanitary prison cell bathroom. At the time Williams contracted his hip infection, he was incarcerated at Riker's.

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). By order dated September 24, 2009 the Court granted Defendants' motion and indicated that its findings, reasoning and conclusions would be stated in a subsequent decision and order. Accordingly, for the reasons discussed below, Defendants' motion to dismiss the complaint in this action is GRANTED.

## I. BACKGROUND [1]

### A. FACTS

On the evening of February 4, 2008, Williams left his prison bed at Riker's to "use the bathroom in Dorm # 1" when his "right hip gave out." (Second Amended Complaint, dated January 21, 2009 ("Second Am. Compl."), at 3.) [2] Six people then lifted him off the bathroom floor and helped bring him to Curbelo. Curbelo monitored Williams for a period of twenty-four hours and then sent him to the hospital. At the hospital, Williams was told by a doctor that he had a "very bad" hip infection that came from "blood and an unclean toilet seat." (Id. at 3.) In response to Williams's inquiry, the doctor responded that the "only way" Williams could have contracted the infection was from contact with an unclean bathroom or toilet seat used by someone with an infection "who was blooding [sic] from his or her back side [sic]." (Id.) A second doctor, who was to perform Williams's surgery, told Williams that his hip infection was "very bad" and it would likely need to be removed if it could not be repaired in surgery.

Williams alleges that he notified Defendants that "Dorm # 1's bathroom was not very clean at all." (Id. at 4.) In response, Carbello stated that the bathroom at issue was steam-cleaned three times a day. Still displeased with the state of the bathroom, Williams appealed by sending Hughes a letter informing him that the bathroom was in fact not being cleaned appropriately and that it needed to be cleaned with bleach every day because Dorm # 1 had an inmate with "an infection in his back side [sic]" using the toilet. (Id.)

Ultimately, Williams's hip was surgically removed. He now seeks damages in the amount of $3.1 million for the loss of his right hip and the pain he endured allegedly as a result of the unclean bathroom in Dorm # 1.

### B. PROCEDURAL HISTORY

Williams filed his original complaint on March 11, 2008. By order dated May 20, 2008, Chief Judge Kimba Wood dismissed Williams's complaint without prejudice and gave him leave to amend in order to correct several deficiencies. Specifically, Williams was ordered to (1) establish that the conditions of his confinement were in violation of the Constitution, (2) establish that the medical treatment he received was in violation of the Constitution, and (3) identify the names of the individuals involved personally in the alleged unconstitutional conduct. Williams filed his

1. The facts below are taken from Williams's Second Amended Complaint, dated January 21, 2009, and all documents attached thereto or referenced therein. The Court accepts these facts as true for the purpose of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 180 (2d Cir.2008). Except where specifically referenced, no further citation to these sources will be made.

2. Williams's Second Amended Complaint consists of seven consecutively numbered pages and three unnumbered handwritten pages labeled "Amended Complaint." For the purposes of this Decision and Order, the three handwritten pages shall be considered part of the Second Amended Complaint and identified as pages eight, nine, and ten, respectively.

Amended Complaint on June 2, 2008. By order dated January 14, 2009, Judge Harold Baer noted that Williams had failed to discuss in detail what occurred in the bathroom, how those events caused his injuries, and whether the events amounted to cruel and unusual punishment under the Eighth Amendment. Judge Baer further noted that Williams did not articulate how he was denied medical attention or how the Defendants were deliberately indifferent to his medical needs. Thus, Judge Baer dismissed the action without prejudice and granted Williams an opportunity to file a Second Amended Complaint pursuant to his instructions.

Williams filed his Second Amended Complaint on January 21, 2009. Defendants now move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), arguing that Williams failed to comply with the two previous dismissal orders and that the Second Amended Complaint still does not state a claim upon which relief can be granted.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer sufficient factual allegations making the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Publ. Offering Secs. Litig.,* 383 F.Supp.2d 566, 574

(S.D.N.Y.2005) (internal quotation marks and citation omitted). For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

■ In the case of a pro se litigant, the Court reads the pleadings leniently and construes them to raise "the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation and internal quotation marks omitted). However, even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a "right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

### B. *THE § 1983 CLAIM*

#### 1. *Legal Standard*

■ To state a claim under § 1983, Williams must show that, while acting under color of state law, Defendants deprived him of federal constitutional or statutory rights. *See McKithen v. Brown,* 481 F.3d 89, 99 (2d Cir.2007). While Williams's Second Amended Complaint fails to specify the precise rights that Defendants allegedly violated, the Court will construe Williams's claims broadly in light of his pro se status. *See McPherson,* 174 F.3d at 280. This Court finds that the "strongest argument" suggested by Williams's allegations is a claim that Defendants have deprived him of his Constitutional right to be free from cruel and unusual punishment under the Eighth Amendment, stemming from unconstitutional (1) medical mistreatment and (2) conditions of confinement at Riker's.

### a. Medical Mistreatment

■ "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference' to [his] serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). This standard includes both (1) an objective "medical need" element measuring the severity of the alleged deprivation, and (2) a subjective "deliberate indifference" element measuring whether the prison official acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir.2003).

■ The objective prong requires that the complainant's medical condition be "sufficiently serious." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). The subjective prong requires that the charged official must act with a sufficiently culpable state of mind. *See id.* "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998) (*quoting Hathaway*, 99 F.3d at 553).

■ A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *See Estelle*, 429 U.S. at 106, 97 S.Ct. 285 (noting that medical malpractice does not become a constitutional violation merely because the victim is a prisoner). Thus, to state a § 1983 claim, Williams must allege that Curbelo knew of and disregarded an excessive risk to his health or safety.

### b. Conditions of Confinement

■ As with claims alleging medical mistreatment, in order for conditions of confinement to constitute a violation of the Eighth Amendment, a prisoner must satisfy a two-part test comprised of both an objective and subjective prong. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir.2002). The objective prong requires that the transgression regarding prison conditions be "sufficiently serious," and constitute an "unquestioned and serious [deprivation] of basic human needs" or a denial of the "minimal civilized measure of life's necessities." *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Phelps*, 308 F.3d at 185. To satisfy the objective prong, a prisoner must demonstrate that he has been denied basic human needs, such as food, clothing, shelter, medical care, and reasonable safety, or has been exposed to conditions that pose an unreasonable risk of serious damage to his future health. *See Phelps*, 308 F.3d at 185.

■ The subjective prong requires that a prisoner allege that the defendants knew of and disregarded an excessive risk to inmate health or safety. *See id.* at 185–86. Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and [they] must also draw the inference." *Id.* (noting that the "deliberate indifference" standard is equivalent to the "recklessness" standard in criminal law). The subjective prong requires that such conditions be imposed by the defendants with "deliberate indifference" to the well-being of the prisoner. *See Wilson*, 501 U.S. at 299, 111 S.Ct. 2321.

2. *Application*

■ Williams's medical mistreatment claim does not state a proper § 1983 claim. In his Second Amended Complaint, Williams alleges that Curbelo waited twenty-four hours to send him to a hospital because she "wanted to wait." (Second Am. Compl. at 9.) Williams essentially claims that Curbelo was negligent in waiting twenty-four hours because it "caused [him] to go throw [sic] a lot of pain and put [his] life at risk." (*Id.*)

Even if Curbelo had been negligent in waiting twenty-four hours to send Williams to a hospital, Williams has not sufficiently alleged a violation of the Eighth Amendment. *See Estelle*, 429 U.S. at 106, 97 S.Ct. 285; *see also Pabon v. Goord*, No. 99 Civ. 5869, 2003 WL 1787268, at *3 (S.D.N.Y. Mar. 28, 2003) ("[S]imple negligence, or an inadvertent failure to provide adequate medical care, even if it amounts to medical malpractice, is insufficient to establish deliberate indifference, or any other constitutional deprivation.").

Williams does not allege that Curbelo knew of and disregarded an excessive risk to his health or safety when monitoring him prior to sending him the hospital. In fact, he does not allege a single fact relating to the specifics of his infection or whether the removal of his hip could have been avoided if Curbelo had sent him to see a surgeon sooner. At most, Williams alleges that Curbelo was merely negligent for "wanting to wait" to monitor him before sending him to a hospital—a decision that more plausibly shows Curbelo was responsive to Williams's plight and not deliberately indifferent to it. (*See* Second Am. Compl. at 9.) Because allegations that a physician was negligent in treating a prisoner fail to state a claim that the physician was deliberately indifferent to the prisoner's well-being, *see Pabon*, 2003 WL 1787268, at *3, Williams does not state a

valid claim of medical mistreatment under the Eighth Amendment.

■ Williams's conditions of confinement claim similarly does not state a plausible § 1983 claim because he meets neither the objective nor the subjective prong of the *Farmer* test. Regarding the objective prong, Williams has not alleged that Defendants deprived him of any of his basic human needs. Nor has he alleged that Defendants exposed him to conditions that unreasonably posed substantial harm to his future health. *See Phelps*, 308 F.3d at 185. Courts have found a variety of prison conditions to constitute a substantial threat to an inmate's health or safety, including prolonged exposure to the bitter cold and deprivation of toiletries. *See Trammell v. Keane*, 338 F.3d 155, 164–65 (2d Cir.2003) (internal citations omitted). Further, the Second Circuit has indicated that unsanitary prison conditions may give rise to an Eighth Amendment violation. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir.2001). In *Gaston*, the Second Circuit reversed a grant of summary judgment to prison authorities after finding that the prisoner plaintiff's allegations of rodent infestation, exposure to frigid temperatures, and exposure to human feces, urine, and sewage water in his cell could constitute an Eighth Amendment violation. *See id.* at 249 F.3d at 161, 166.

Unlike the allegations of unsanitary conditions in *Gaston*, Williams's allegations are general in nature and do not specify any particularized facts regarding the bathroom's level of hygiene. Indeed, the only allegation submitted to this Court regarding the level of hygiene is that the bathroom was "unclean." Without more, this Court finds that Williams fails to allege that Defendants unreasonably subjected his future health to substantial harm.

Even if Williams's allegations had satisfied the objective prong of the *Farmer* test, they do not satisfy the subjective prong because Williams does not allege that either Carbello or Hughes was deliberately indifferent to his health or safety. Carbello responded to Williams's complaint stating that the bathroom is steam-cleaned three times a day, a response that undermines the plausibility of a claim that Carbello was deliberately indifferent. (*See* Second Am. Compl. at 8.) Similarly, Hughes received one letter from Williams describing the need for additional cleaning of an "unclean bathroom." (*See id.* at 4.) Williams does not plead any facts regarding what Hughes did or did not do with this information. Thus, the Court finds that Williams has not pleaded facts showing that Hughes was deliberately indifferent to his well-being.

██ The Court therefore dismisses Williams's complaint. The Court will not grant Williams leave to file an amended complaint because Williams was already made aware of the legal standards that the Court has just applied when he filed two previous complaints based on these facts. The order by Judge Baer directing Williams to file a Second Amended Complaint described the requirements for stating a medical mistreatment claim and a conditions of confinement claim. *See Williams v. Hughes,* No. 07 Civ. 4718, Docket No. 5 (S.D.N.Y. January 14, 2009). Because Williams has already had two opportunities to file a complaint that satisfies the standards outlined by the orders of Judge Wood and Judge Baer, the Court dismisses Williams's complaint with prejudice.

## C. *REMAINING CLAIMS AND DEFENSES*

██ While Williams has not clearly asserted a claim for negligence or medical malpractice under state law, the Court is mindful that it should construe Williams's pleadings liberally. *See McPherson,* 174 F.3d at 280. However, even if the Court were to construe his Second Amended Complaint as alleging such state law claims, dismissal of the federal claim deprives the Court of jurisdiction over any remaining state law claims. Where federal claims are eliminated in the early stages of litigation, federal courts "should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York,* 464 F.3d 255, 262 (2d Cir.2006). The Court therefore dismisses any such state law claims without prejudice.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated September 24, 2009 directing dismissal of this action is amended to incorporate the discussion set forth herein; and it is further

**ORDERED** that the defendants' motion (Docket No. 21) to dismiss the Second Amended Complaint of plaintiff Derrick S. Williams ("Williams") is GRANTED with prejudice. The dismissal is without prejudice for Williams to proceed in state court with any state law claims arising from the facts alleged.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**