Wesley MARTIN, Plaintiff,

v.

COUNTY OF NASSAU, Police Detective Charles Decaro, in his professional and individual capacities, Police Commissioner Lawrence W. Mulvey, in his professional capacity, Police First Deputy Commissioner Robert McGuigan, in his professional capacity, Police Assistant Commissioner, Denis Monette, in her professional capacity, Police Chief of Department Anthony Rocco, in his professional capacity, Police Chief of Detectives Patrick O'Conner and Nassau County Prosecutor, Defendants.

No. 08–cv–4548 (ADS)(WDW).

United States District Court, E.D. New York.

March 12, 2010.

Law Offices of Jacqueline Hollander, P.C., by Jacqueline Kate Hollander, Esq., of counsel, New York, NY, for Plaintiff.

John Ciampoli, Nassau County Attorney, by Assistant Nassau County Attorney Ralph J. Reissman, Mineola, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of the arrest and detention of plaintiff Wesley Martin on

January 16, 2006 for alleged grand larceny. Martin brings this suit against Nassau County; the Nassau County Police Detective who arrested him, Charles DeCaro; six administrators of the Nassau County Police Department; and Nassau County District Attorney Kathleen Rice. Martin seeks damages pursuant to 42 U.S.C. §§ 1983 and 1985(3) for violation of his various constitutional rights, and also asserts state law claims for false arrest, malicious prosecution, and numerous other torts. The defendants now move for judgment on the pleadings dismissing the complaint. For the reasons discussed below, the Court grants the defendants' motion in its entirety.

## I. BACKGROUND

The facts in this decision are taken primarily from the plaintiff's complaint. As is required on a motion for judgment on the pleadings, all allegations of fact set forth in the plaintiff's complaint are taken as true. In addition, the Court takes judicial notice of a relevant judgment by New York State District Court Judge for Nassau County Erica L. Prager. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006) (stating that courts may take judicial notice of public documents in deciding a motion to dismiss).

On January 16, 2006 at approximately 11:30 in the morning, defendant Nassau County Detective Charles DeCaro arrested plaintiff Wesley Martin in front of his home in Williston Park, New York without an arrest warrant. Upon apprehending Martin, DeCaro placed him in handcuffs and instructed him that he was "being taken down to the station for questioning." (Compl., ¶ 15.) DeCaro refused to elaborate further on the charges against Martin.

At the Williston Park precinct, Martin was "booked," searched, and "placed in the precinct jailhouse overnight." (Id. at ¶ 17.) Martin was then transferred to "Nassau County Corrections," after which unnamed individuals interrogated him "over the course of 36 hours." (Id.) Martin does not plainly explain what happened during this period, but he does state that he was allowed only one phone call, and that he was not allowed to post bail. Martin also alleges that he was denied medication for his "disability," though he does not specify the medication or the nature of the disability. DeCaro apparently remained involved with the plaintiff's incarceration for this period, as he also allegedly failed to provide Martin with a "medical evaluation" and "continued medical observations" while he was in custody. (Id.) Then, "after approximately 7 hours of unrelenting, brutal interrogation," (id.), the plaintiff confessed to stealing a car from Euro Car, a dealership for foreign cars. It is unclear when this alleged seven-hour interrogation commenced or concluded.

According to the plaintiff, DeCaro also prepared a false police report describing the incident. This report included false statements made against Martin, as well as an incorrect time of arrest. The plaintiff also alleges that he was interrogated without being informed of his *Miranda* rights.

Martin further states that, after his arrest, he was in "at least 3 jails over the period of 36 hours," although none of the jails are mentioned by name. (Id. at ¶ 63.) Martin asserts that the jails were "poorly maintained", "filthy," and had "inadequate seating." (Id. at ¶ 64.) In addition, unidentified sick and cold inmates at the jails were "denied adequate clothing to keep warm," and there were no beds or bedding supplies. (Id.) The air in the jails also had a "high ammonia content so as to cause eye and respiratory irritation." (Id.) Martin also states that "[t]here was one incident of an inmate with a slashed/bloodied

neck that was sustained within the facility." (Id.) No other details of this incident are alleged. The Court notes that Martin does not state that he sustained any injury as a result of his confinement in these jails.

After Martin's arrest, the Nassau County District Attorney charged him with grand larceny. On March 1, 2007, New York District Court Judge Erica L. Prager held a combined *Huntley* and *Dunaway* hearing to determine whether DeCaro had probable cause to arrest Martin, and whether Martin's confession should be suppressed. After considering the evidence, Judge Prager held that DeCaro did have probable cause to arrest Martin, but that Martin's confession was not admissible against him at trial. *People v. Martin,* No. NAOO1100 (N.Y. Dist. Ct. Nassau Cty. March 29, 2007) (rulings on the record). The Nassau County District Attorney dropped the charges against Martin on June 21, 2007.

On August 24, 2007, Martin filed a notice of claim with Nassau County, asserting "false arrest, false imprisonment, intentional and negligent infliction of emotional harm, negligence, negligent hiring and retention, negligent supervision and training, abuse of process, malicious prosecution and violation of civil rights." (Notice of Claim, dated Aug. 21, 2007, ¶ 2.) On November 10, 2008, Martin filed the present action in this Court seeking damages and injunctive relief pursuant to 42 U.S.C. §§ 1983 and 1985(3) for violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Martin also asserted claims under New York State law for false arrest; false imprisonment; illegal search; malicious prosecution; gross incompetence; deliberate indifference; negligence in training, supervising and discipline; negligent entrustment; libel and defamation of character; and intentional infliction of emotional distress.

On May 11, 2009, the defendants answered the complaint, attaching a multitude of substantive evidentiary documents that it sought to incorporate by reference in its pleading. On July 5, 2009, the defendants moved for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), seeking to dismiss all claims against all defendants. The plaintiff opposes this motion.

## II. DISCUSSION

### A. Standard for Judgment on the Pleadings

■ The defendant has moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c), claiming that the plaintiffs have not stated a claim upon which relief may be granted. "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006). The Court therefore applies the Rule 12(b)(6) standard here.

Under the now well-established *Twombly* standard, a complaint should be dismissed under Rule 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, sup-

ported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

**B. As to Incorporation by Reference of Documents Attached to the Defendants' Answer**

The defendants have appended to their answer numerous substantive documents, and they request that the Court consider these in determining this motion for judgment on the pleadings. Specifically, the defendants have attached police reports, witness statements, and other similar documents relating to the plaintiff's arrest. While the plaintiff has not objected to this, the Court *sua sponte* disregards these documents.

■ The defendants appear to misunderstand this Circuit's rule with regard to the consideration of documents outside the pleadings. When deciding a motion for judgment on the pleadings or dismissal, courts at times state that they may consider documents incorporated into the "pleadings." *See, e.g., Life Product Clearing, LLC v. Angel,* 530 F.Supp.2d 646, 651 (S.D.N.Y.2008). However, this is essentially shorthand for a more robust rule. The more complete articulation of the rule is that a court may consider a document outside the complaint only when the plaintiff relied on it to frame the complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). Here, in framing his complaint the plaintiff did not rely upon the documents the defendants are asking the Court to consider. The only arguable exception to this is the plaintiff's written confession, a document that, in any event, the Court finds unnecessary to consider to determine the present motion. Thus, the Court will disregard these documents for the purposes of this motion.

**C. As to the Plaintiff's State Law Claims**

■ The plaintiff asserts ten claims against the defendants that sound in New York State law. Nine of these claims, (1) false arrest, (2) false imprisonment, (3) illegal search, (4) gross incompetence, (5) deliberate indifference, (6) negligence in training, supervising and discipline, (7) negligent entrustment, (8) libel and defamation of character, and (9) intentional infliction of emotional distress, accrued upon Martin's arrest or within at most two days thereafter, or January 18, 2006. The tenth state law claim, malicious prosecution, accrued when the charges were dropped against Martin on June 21, 2007. *See, e.g., Morgan v. Nassau County,* 03–CV–5109 (SLT)(WDW), Slip Copy, 2009 WL 2882823, *15 (E.D.N.Y. Sept. 2, 2009) (citing *Peresluha v. City of New York,* 60 A.D.2d 226, 400 N.Y.S.2d 818, 820 (1st Dep't 1977)).

The defendants assert that the plaintiff failed to give them timely notice of the first nine state law claims, and that they are thus barred. The defendants further contend that the plaintiff failed to timely commence an action for the tenth state law claim, malicious prosecution, and that this claim is also barred. The plaintiff does not address this issue.

■ Generally, state procedural law applies to state claims brought in federal court. *See, e.g., Henneberger v. County of Nassau,* 465 F.Supp.2d 176, 197 (E.D.N.Y.

2006) (citing *Felder v. Casey*, 487 U.S. 131, 141, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988)). New York County Law § 52 therefore applies to the plaintiff's state law claims here, and provides that New York General Municipal Law will limit the time available for notice and prosecution of state law claims against a county or its employees. Specifically, Section 52 states:

Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

■ Here, the plaintiff's state law claims are asserted entirely against Nassau County and its employees and agents, so Section 52 applies, and incorporates by reference Sections 50–e and 50–i of the New York General Municipal Law. These sections provide that a plaintiff has ninety days from the date a state law claim accrues to provide notice to a county or its employees, and only one year and ninety days from that claim's accrual to commence an action. *See Anderson v. Nassau County Dept. of Corrections*, 558 F.Supp.2d 283, 302–03 (E.D.N.Y.2008) (Spatt, J.) (applying Section 50–e notice period to a state claim in federal court); *Geslak v. Suffolk County*, No. 06–CV–251 (NGG)(AKT), 2008 WL 620732, *2 (E.D.N.Y. Mar. 5, 2008) (applying Section 50–i limitations period to a state claim in federal court).

■ All of the plaintiff's state law claims—except for the malicious prosecution claim—accrued at the latest on January 18, 2006. The plaintiff did not provide notice to any of the defendants of its claims until more than one year later, on August 24, 2007. These claims were therefore not timely noticed, and are barred. Similarly, the plaintiff's malicious prosecution claim accrued on June 21, 2007, but the present action was not commenced until a year and over four months later, on November 10, 2008. It was therefore not timely commenced, and is also barred. All the New York state law claims are therefore dismissed.

**D. As to the Plaintiff's Claims Pursuant to Section 1985(3)**

The plaintiff alleges that the defendants are liable under 42 U.S.C. § 1985(3) for conspiring to violate various of his federal rights. The defendants assert that the plaintiff has not sufficiently alleged the race-based or protected class-based animus necessary to sustain a Section 1985(3) action. The Court agrees.

■ To prevail on a claim under Section 1985(3), a plaintiff must show:

(1) a conspiracy;

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws;

(3) an act in furtherance of the conspiracy;

(4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). In addition, the plaintiff must also show that the con-

spiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* at 829, 103 S.Ct. 3352. At the pleading stage, therefore, a valid Section 1985(3) claim must include "more than conclusory allegations that [the plaintiff] was discriminated against because of his [membership in a protected class]." *Mian v. Donaldson,* 7 F.3d 1085, 1088 (2d Cir.1993).

■ Here, the plaintiff has not stated his race, and does not allege that the defendants discriminated against him on the basis of race. Rather, he maintains that he is a member of a protected class because he has a "disability," as the term is defined under the applicable law. According to the plaintiff, the defendants discriminated against him on the basis of his membership in this class. However, the plaintiff's assertion that he is disabled is itself a bald conclusion of law. The plaintiff has provided no description of the basic nature of his alleged disability, let alone its name. Moreover, even if the plaintiff had a disability as defined under the law, he alleges no facts that suggest that this was the basis for the alleged violation of his rights. The Court therefore dismisses the plaintiff's Section 1985(3) claim.

### E. As to the Plaintiff's Remaining Claims (Namely, Section 1983 Claims) Asserted Against the Six Administrators of the Nassau County Police Department

The plaintiff asserts several claims pursuant to 42 U.S.C. § 1983 against six administrative employees of the Nassau County Police Department—namely, Police Commissioner Lawrence W. Mulvey, Police First Deputy Commissioner Robert McGuigan, Police Assistant Commissioner David S. Mack, Police Assistant Commissioner Denis Monette, Police Chief of Department Anthony Rocco, and Police Chief of Detectives Patrick O'Conner (the "Police Administrators").

■ To sustain a claim under Section 1983, a plaintiff must allege facts showing the named defendants' personal involvement in the alleged violations. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted); *see also Gollomp v. Spitzer,* No. 06–CV–802 (FJS/RFT), 2007 WL 433361, *4 (N.D.N.Y. Feb. 5, 2007) (aff'd, 568 F.3d 355, 365 (2d Cir.2009)).

■ Here, the plaintiff has alleged that the Police Administrators knew of and directed the alleged violation of the plaintiff's rights. However, the plaintiff has alleged no facts that support this conclusion. Rather, the plaintiff does not allege a single discrete act by any of the Police Administrators, or identify them individually at any point. Under Second Circuit law, this kind of vague conclusory allegation against a public administrator does not state a claim for relief. *See Colon v. Coughlin,* 58 F.3d 865, 873–74 (2d Cir. 1995) (holding that the high position held by defendant Commissioner of New York City Correctional Facilities was insufficient to sustain conclusory claim that he negligently trained and supervised officers). Therefore, the Court dismisses all of the plaintiff's claims asserted against the Police Administrators.

### F. As to the Plaintiff's Remaining Claims Asserted Against Nassau County District Attorney Kathleen Rice

The plaintiff asserts a federal claim for malicious prosecution against defendant Nassau County District Attorney Kathleen Rice pursuant to Section 1983. While the defendants concede that a malicious prosecution claim may be brought under Section

1983, they contend that the claim is barred by the absolute immunity enjoyed by prosecutors. The defendants counter that Rice acted outside her duties as a prosecutor, and is therefore subject to suit.

To prevail on a Section 1983 claim for malicious prosecution, the plaintiff must show "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir.2003) (internal citations omitted). However, even if these factors are met, prosecutors enjoy absolute immunity from malicious prosecution claims as long as they are acting within the traditional prosecutorial function. *Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir.2004). The parties agree that prosecutorial immunity is limited when a prosecutor takes actions outside the traditional province of the prosecutorial function.

Here, Rice's prosecution of criminal defendants is within the traditional prosecutorial function, and she is therefore immune from suit based on her prosecution of Martin.

Nevertheless, the plaintiff asserts that Rice is not entitled to immunity from suit for certain acts she took that implicated the policing function that was exercised before she commenced the plaintiff's prosecution. Specifically, Martin alleges:

Upon information and belief, and at all times, that the officers were acting as agents for and under the direction of, either directly or through their superiors, [Rice], and that [Rice] knew of and approved of and fully or in part controlled the activities of the officers who acted as servants to their superiors and to [Rice].

(Compl., ¶ 48.)

However, the plaintiff does not allege by what authority Rice directed the actions of any Nassau County police officers, let alone her authority for directing officer DeCaro, who arrested the plaintiff. Nor does the plaintiff allege any meetings or communications that support his allegation that Rice directed any police officer in that manner. Even assuming, *arguendo*, that Rice's alleged involvement with Nassau County police officers would not be protected by prosecutorial immunity, the Court nevertheless finds that the plaintiff's claims are not plausible. Rice is the District Attorney for Nassau County, and the complaint states only that, on information and belief, she controlled Nassau County police officers. The plaintiff cannot circumvent the traditional immunity enjoyed by prosecutors by alleging an exception to the immunity doctrine without any supporting facts. The Court finds that the plaintiff's conclusory allegations are therefore not plausible, and dismisses the remaining claims asserted against Rice on the basis of prosecutorial immunity.

In addition, the Court is satisfied that Judge Prager's determination of probable cause for the plaintiff's arrest, as discussed below, establishes a basis for his prosecution. The Court takes judicial notice of Judge Prager's finding of probable cause, and also notes that the plaintiff alleges no facts that suggest that Rice later obtained information abrogating Judge Prager's finding. He therefore cannot satisfy the third prong of the test for malicious prosecution, which requires a showing of a lack of probable cause for the proceeding. For this reason, also, the plaintiff's remaining claims against Rice are dismissed.

### G. As to the Remaining Claims Asserted Against Detective DeCaro

The plaintiff asserts claims against Detective DeCaro pursuant to Section 1983 for violations of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights. In particular, the plaintiff asserts that DeCaro violated these rights by falsely arresting him, maliciously prosecuting him, failing to inform him of the charges against him, and failing to provide medical care or appropriate conditions of confinement. The defendants assert that DeCaro is entitled to qualified immunity with respect to the false arrest and malicious prosecution charges, and that the plaintiff has otherwise failed to state a claim for violations of the Sixth and Eighth Amendments. The Court agrees.

#### 1. False Arrest and Malicious Prosecution

The plaintiff asserts federal false arrest and malicious prosecution claims against DeCaro. In opposition, the defendants contend that these causes of action are precluded by DeCaro's qualified immunity.

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit " 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' " *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir.1999) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)). The Second Circuit has explained this concept of "arguable probable cause" as follows:

[a]rguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir.2001) (quotations and citations omitted).

In addition, the presence of "arguable probable cause" entitles a police officer to immunity from claims of malicious prosecution arising from an alleged false arrest. *See Codling v. City of New York*, 68 Fed.Appx. 227, 230 (2d Cir.2003).

Generally, the existence of arguable probable cause in support of qualified immunity is a question of fact, and therefore not an appropriate grounds for dismissal on a Rule 12(c) motion. However, here the Court takes judicial notice of the fact that another court has already found probable cause for the plaintiff's arrest. In the Court's view, this fact is determinative.

At the outset, the Court notes that, while a judge found there was probable cause to arrest Martin, the charges against him were later dropped, and Martin did not have the opportunity to appeal the finding. The Court therefore does not treat the prior determination of probable cause as *res judicata*. *See, e.g., Algonquin Power Income Fund v. Christine Falls of New York, Inc.*, 362 Fed.Appx. 151, 154–55, No. 08–bk–6026, Slip Copy, 2010 WL 177244, *3 (2d Cir. January 20, 2010) (holding that a decision does not have issue preclusion effects when it cannot be appealed by a party because that party prevailed on a separate issue).

Nevertheless, the Court notes that Judge Prager made the finding of probable cause after a full hearing at which the plaintiff presented evidence and cross examined witnesses, and after argument and deliberation. As discussed above, a police officer is entitled to qualified immunity not only when the officer had probable cause to an arrest the plaintiff, but also when there was *arguable* probable cause for the arrest. *See Posr,* 180 F.3d at 416. In the Court's view, Judge Prager's finding of probable cause—even though it was not subject to appellate review—is sufficient to establish as a matter of law that there was at least *arguable* probable cause for Martin's arrest. The Court therefore finds that qualified immunity attaches here as a matter of law. *See, e.g., Justice v. Town of Cicero,* No. 06 C 1108, Not Reported in F.Supp.2d, 2007 WL 2973851, *6 (N.D.Ill. October 10, 2007) (taking judicial notice of judicial finding of probable cause to support qualified immunity for arresting officers at the motion to dismiss stage). This qualified immunity protects DeCaro from suit for both false arrest and malicious prosecution. *Posr,* 180 F.3d at 416; *Codling,* 68 Fed. Appx. at 230. The Court therefore dismisses the plaintiff's Section 1983 false arrest and malicious prosecution claims asserted against DeCaro.

### 2. Sixth Amendment Failure to Inform Claim

The plaintiff also contends that DeCaro violated his Sixth Amendment rights by failing to inform him of the charges against him prior to his release. The defendants dispute this contention, on the ground that the Sixth Amendment right to be informed of the basis for detention does not adhere until the government commits to prosecution. While the plaintiff asserts the underlying claim in the complaint, he does not address the defendants' objection in his opposition papers.

The Second Circuit does not appear to have definitively ruled on the issue of when the right to be informed of charges adheres. However, several district courts in this Circuit have held that an arresting officer need not inform an arrestee of the charges against him. *See Sheikh v. New York Police Department,* Nos. 03–cv–6326 (NGG), 05–cv–4718 (NGG), 2008 WL 5146645, *10, n. 11 (E.D.N.Y. Dec. 5, 2008); *Ochoa v. City of West Haven,* No. 08–cv–0024 (WWE), 2008 WL 4426960, *3 (D.Conn. Sept. 26, 2008); *Rivera v. Granucci,* Civ. No. N–87–480 (JAC), 1993 WL 76202, *6 (D.Conn. Mar. 12, 1993). In addition, appellate courts outside the Second Circuit have stated the same rule. *See, e.g., Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir.1987) (holding that the Sixth Amendment right to be informed of charges does not adhere until the government commits to prosecution).

Here, DeCaro is alleged to have refused to inform Martin of the charges against him only while arresting and transporting him to the police station. In the Court's view, Martin's Sixth Amendment right to be informed of the charges against him had not yet adhered. Thus, the Court dismisses the plaintiff's claim against DeCaro based on the violation of his Sixth Amendment rights.

### 3. Eighth Amendment Cruel and Unusual Punishment Claim

The plaintiff also asserts that DeCaro failed to provide him with medication and a medical examination while incarcerated, and also placed him in jails that were dirty and dangerous. The plaintiff contends that these acts violated his rights under the Eighth Amendment. The defendants contend that the plaintiff has not pled sufficient facts to support this claim.

As a preliminary matter, the Court notes that the plaintiff's claims re-

lating to the conditions of his confinement do not implicate the Eighth Amendment, but rather the Fourth and Fourteenth Amendments. This is because the plaintiff was detained after arrest, but not imprisoned for a crime. *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (holding that Eighth Amendment protections do not directly apply to pre-trial detainees, but that the Fourth and Fourteenth Amendments protect the same interests as those afforded by the Eighth Amendment). Nevertheless, the Second Circuit has held that the standards used to determine an Eighth Amendment violation apply to a pre-trial detainee, even though a detainee's rights in this arena arise under the Fourth and Fourteenth Amendments. *Id.* This technicality therefore does not affect the Court's analysis.

■ Generally, jailors have a duty to ensure that inmates receive adequate medical care. *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006). In determining whether this duty is breached, courts consider, first, whether an inmate's condition is sufficiently serious to necessitate medical care. *Id.* For this inquiry, the Court considers factors such as "whether 'a reasonable doctor or patient would find [the medical condition] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether [the condition] causes 'chronic and substantial pain.'" *Id.* at 280 (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)). If this first inquiry is satisfied, the Court must also consider whether the individual withholding care acted with deliberate indifference. *Id.*

■ As a preliminary matter, the plaintiff has not plainly alleged facts that show DeCaro had any responsibility for the plaintiff's medical care, or power to provide such medical care. Nevertheless, assuming that DeCaro had a duty to provide medical care, the plaintiff has alleged no facts showing that his medical condition was sufficiently serious to warrant care. To the contrary, the plaintiff does not allege the symptoms from which he suffered, the name of his condition, or the name of the medication he allegedly required. The plaintiff has therefore not stated a plausible claim against DeCaro for failure to provide medical treatment.

■ Nor is there a viable cause of action against DeCaro based on the physical condition of the jails in which he was kept. A claim based on the physical condition of a jail cell requires both a showing that the plaintiff lacked "the minimal civilized measure of life's necessities" while confined, and that the person responsible for this deprivation acted with knowledge and deliberate indifference. *See, e.g., Williams v. Carbello,* 666 F.Supp.2d 373, 378 (S.D.N.Y.2009). The first prong is referred to as the objective prong, while the second is the subjective prong. *Id.*

■ Here, the plaintiff has not even alleged that DeCaro was aware of the condition of his jail cells, let alone that he had control over them. Thus, even assuming that the plaintiff has alleged jail conditions that could be plausibly viewed as raising a constitutional issue, the plaintiff has failed to satisfy the subjective prong of the conditions of confinement test. Moreover, the plaintiff makes no allegation that he suffered any cognizable injury as a result of the alleged poor conditions of his confinement—an infirmity that the plaintiff does not contest in his opposition papers. *See Varszegi v. Armstrong,* 205 F.3d 1327 (Table), 2000 WL 253697, *1 (2d Cir. March 6, 2000) (affirming district judge's dismissal of conditions of confinement claim where plaintiff had alleged no "specific allegations indicating that he had suffered an injury as a result of the alleged conditions"). As such, the plaintiff has not stat-

ed a claim against DeCaro based on the conditions of his confinement, and this Fourth and Fourteenth Amendment claim is dismissed.

## H. As to the Remaining Claims Asserted Against the County of Nassau

The plaintiff also asserts each of the previously discussed Section 1983 claims against defendant County of Nassau. The defendant county maintains that it is protected from liability because the plaintiff has not sufficiently pled municipal liability under *Monell*, and also because the underlying claims are unsupported by the alleged facts. The plaintiff disputes these contentions.

 To assert a claim against a municipality pursuant to Section 1983, a plaintiff must satisfy the well-settled requirements of *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell* and its progeny, a Section 1983 plaintiff must show that a violation of his rights by an employee or agent of a municipality was the result of a "policy or custom" of the municipality. *Id.* at 694, 98 S.Ct. 2018. Conclusory allegations of municipal custom or policy are insufficient to satisfy this requirement. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir.1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993)); *Cerbelli v. City of New York*, 600 F.Supp.2d 405, 411 (E.D.N.Y.2009) (holding same). This rule is applicable with regard to a Section 1983 claim that the conditions of a prisoner's confinement violated his constitutional rights. *See Maxwell v. City of New York*, 108 Fed.Appx. 10, 12 (2d Cir.2004) (dis-

missing conditions of confinement claim against a municipality for failure to present evidence of custom or policy of causing or permitting poor conditions); *Byas v. New York City Dept. of Correction*, 173 F.R.D. 385, 388 (S.D.N.Y.1997).

 Here, the plaintiff's allegations of a municipal custom or policy are entirely conclusory. The plaintiff alleges no facts that support the existence of a custom or policy of violating individuals' rights, except for facts pled in connection with the alleged violation of his own rights. This is insufficient to state a Monell claim. *See Ying Jing Gan*, 996 F.2d at 536. The plaintiff's Section 1983 claims against Nassau County are therefore dismissed.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion to dismiss all of the causes of action asserted against all defendants is granted; and it is further

**ORDERED** that the plaintiff's complaint is dismissed in its entirety; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**